UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|                                         |   |                |
|-----------------------------------------|---|----------------|
| CARYN BENNETT,                          | ) |                |
|                                         | ) |                |
| Plaintiff,                              | ) |                |
|                                         | ) | Civil No.      |
| v.                                      | ) | 13-10290-FDS   |
|                                         | ) |                |
| CAPITOL BC RESTAURANTS, LLC, d/b/a      | ) |                |
| Bugaboo Steakhouse,                     | ) |                |
|                                         | ) |                |
| Defendant.                              | ) |                |

# MEMORANDUM AND ORDER ON
# DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is an action for sex discrimination arising out of a pregnancy and maternity leave. Plaintiff Caryn Bennett was employed as the general manager of the Bugaboo Creek Steakhouse in Braintree, Massachusetts. She became pregnant and took a leave of absence. While she was on leave, the corporate owner of the restaurant filed for bankruptcy and was bought by defendant Capitol BC Restaurants, LLC. Capitol fired all of the restaurant's employees. It then rehired many of them, but did not rehire Bennett. Bennett brought suit against Capitol, alleging that she was fired and not rehired because of her pregnancy in violation of state and federal anti-discrimination law.

Capitol has moved for summary judgment. For the following reasons, the motion will be granted in part and denied in part.

I. **Background**

   A. **Factual Background**

   The facts summarized below are undisputed unless otherwise noted.

   1. **Caryn Bennett's Pregnancy**

   In December 2000, Caryn Bennett was hired by Charles Brown's Bugaboo Creek Steakhouse ("BCS"). (Pl. SMF ¶ 1; Def. SMF ¶ 1). On October 9, 2009, she became the general manager of the Bugaboo Creek Steakhouse in Braintree, Massachusetts, earning an annual salary of $62,500. (Def. SMF ¶¶ 29, 36).[1] During her tenure with BCS, Bennett worked as a kitchen manager, manager, regional training captain, bartender, server, and trainer. (Pl. SMF ¶ 1).

   In September 2010, Bennett informed her managers that she was pregnant and that her due date was April 3, 2011. (*Id.* ¶ 2). In December 2010, due to complications with her pregnancy, she was prescribed bed rest until the birth of her child. (*Id.* ¶ 2-3). Her leave during that period was approved by her managers. (*Id.*). While she was on leave, Michael Evans, the restaurant's kitchen manager, filled in for her as general manager. (*Id.* ¶ 5).

   Bennett gave birth on March 24, 2011. (*Id.* ¶ 4). She requested and received eight weeks of maternity leave from BCS's regional manager, Brian Libby. (*Id.* ¶ 2, 4). She was scheduled to return to work on May 19, 2011. (*Id.* ¶ 4).

   2. **BCS's Bankruptcy and Sale**

   In 2010, the corporate owner of BCS filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Delaware. (*Id.* ¶ 6; Def. SMF ¶ 1). On March 11, 2011, the

---

[1] Defendant contends that plaintiff was assistant general manager of the Braintree restaurant. (Def. SMF ¶ 37). Plaintiff contends that she was listed as an assistant general manager for a short period of time to accommodate another employee. (Bennett Dep. at 55).

sale of BCS's twelve restaurants to Capitol BC Restaurants, LLC, was approved by the bankruptcy court. (Pl. SMF ¶ 6; Def. SMF ¶ 4). The sale was finalized on April 21, 2011. (Pl. SMF ¶ 7). Under the sale, Capitol bought BCS's restaurants free of any claims or liabilities relating to the employment or termination of employees. (Def. SMF ¶¶ 13-15). Capitol laid off all of BCS's employees effective April 21. (*Id.* ¶ 18).

### 3. End of Bennett's Employment

Between March 11 and April 21, Capitol's president, Scott Bocek, and Christopher Campbell, president of Capitol's Bugaboo Creek operations, visited the Bugaboo Creek Steakhouses in Massachusetts. (Def. SMF ¶¶ 19-21, 58; Pl. SMF ¶ 7). Bocek and Campbell decided that the Braintree restaurant's management team should be reduced from four to three employees. (Bocek Dep. at 11). They planned on rehiring three of the four managers currently working at the restaurant. (*See id.* at 9-12).

To determine what managers would be rehired, Bocek and Campbell asked Libby to rank the managers in his region. (Libby Aff. ¶ 4).[2] Libby sent them his rankings on March 22. (*Id.*). Evans was ranked last out of all the managers in the region. (*Id.* ¶ 6). Bennett was not ranked because she was on leave. (*Id.*).

Libby then met with Bocek and Campbell to discuss the rankings. (*Id.* ¶ 7). Libby told them that Bennett was on maternity leave, but that she should not lose the opportunity to keep her job because of her maternity leave. (*Id.*). He "praised Bennett as well-liked, respected, and

---

[2] Defendant contends that the statements in Libby's affidavit are inadmissible hearsay. *See* Fed. R. Evid. 801. His statements could be admissible, however, if they are offered to show something other than their truth, such as defendant's knowledge of plaintiff's interest in the general manager position. *See* Fed. R. Evid. 801(c)(2) (defining hearsay as a statement that "a party offers in evidence to prove the truth of the matter asserted in the statement").

3

full of energy," and told Bocek and Campbell that Bennett could interview at any time. (*Id.*).

Bocek and Campbell told Libby that they would not interview Bennett because they had met and liked Evans. (*Id.* ¶ 8). Libby told them it was unfair for them to exclude Bennett because she was on maternity leave. (*Id.*). He also told them that Bennett was "a better candidate" than Evans and should be given the opportunity to return to her job. (*Id.* ¶ 9).

According to Libby, Bocek became angry and told him, "either you're with us or you're not." (*Id.* ¶ 10). Bocek also told Libby he would be fired if he persisted in arguing that Bennett should be hired as the general manager of the Braintree restaurant. (*Id.*).[3]

Bocek and Campbell offered full-time positions to Evans and the two assistant managers in the Braintree restaurant, Jamie Carrozza and Matthew Catalano. (Pl. SMF ¶ 15). They were officially hired on April 21, 2011. (*Id.*). None of them had been on leave for reasons related to pregnancy or childbirth. (*Id.* ¶ 26). Evans was hired at an annual salary of $55,000. (Def. SMF ¶ 28).

Evans had been working as the acting general manager of the restaurant for four months, and had worked there a little more than a year. (Pl. SMF ¶ 23-24). Bennett had been a general manager for one-and-a-half years, and worked at Bugaboo Creek restaurants for ten-and-a-half years. (*Id.*).

### 4. Subsequent Employment Offers

On May 13, 2011, Bennett spoke to Libby about when she could return to work. (*Id.* ¶ 18). Libby told her to meet with Bocek and Campbell that day. (*Id.*). At that meeting, Bocek and Campbell told Bennett that she had been laid off as part of the sale of the Bugaboo Creek

---

[3] At his deposition, Bocek said he never threatened to fire Libby over plaintiff's employment. (Bocek Dep. at 28).

4

restaurants. (*Id.* ¶ 20). They also told her that because she had been on maternity leave, they had been unable to meet with her and therefore did not rehire her. (*Id.*).

Bocek and Campbell then offered Bennett a job as a manager assistant. (*Id.* ¶ 21-22). Manager assistants worked twenty hours per week at an hourly wage of $16, without benefits. (*Id.*).[4] Bennett told them she would consider the offer. (Def. SMF ¶ 62). She also discussed her interest in training jobs with them. (*Id.* ¶ 63).

On May 18, Bennett left Campbell a voice mail stating that the manager assistant job was "not going to work out." (Saxe Decl., Ex. G). She also said that "not having benefits is not going to work out" because she had just had a baby. (*Id.*).

Libby later informed Bennett that he had supported her continued employment but that Bocek and Campbell had refused to consider her. (Pl. SMF ¶ 28).

On June 8, 2011, Bennett filed a charge of discrimination against Capitol with the Massachusetts Commissions Against Discrimination and the Equal Employment Opportunity Commission. (*Id.* ¶ 29).

On July 15, Campbell offered Bennett a position as a regional trainer, responsible for designing and conducting training of employees at the Massachusetts Bugaboo Creek restaurants. (Def. SMF ¶ 66-67). The position provided an annual salary of $50,000 and benefits. (*Id.* ¶ 68). The offer was unconditional, and was extended in writing on August 10, 2011. (*Id.* ¶¶ 68-69). The offer remained open until August 24, 2011. (*Id.* at 69). Bennett did not respond because she did not want to work for Capitol because she believed it had discriminated against her. (Pl. SMF ¶ 29). In addition, Bennett contends that she did not accept

---

[4] Defendant contends that the manager assistant position is a full-time position. (Def. SMF ¶ 60-61).

the job because "the pay rate was not comparable to her prior job, that to her knowledge the position was more work for less money," and that she was mad that after "ten and a half years of exemplary service" she had not been informed of her termination until a month afterward. (Def. SMF ¶ 71).

On July 17, 2012, the MCAD dismissed plaintiff's charge of discrimination and issued her a notice of her right to sue. (Saxe Decl., Ex. D).

### B. Procedural Background

On February 14, 2013, plaintiff filed the complaint in this case. It alleges discrimination in hiring and discrimination in termination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). It also alleges analogous violations of the state anti-discrimination law, Mass. Gen. Laws ch. 151B, § 4. On April 7, 2014, defendant filed a motion for summary judgment.

## II. Standard of Review

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted). Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of

the non-moving party.  *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (footnote omitted) (internal quotation marks omitted).  The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence."  *Id*. at 256-57.

## III. <u>Analysis</u>

### A. <u>Claim for Discrimination in Hiring</u>

The complaint alleges that defendant discriminated against plaintiff by refusing to hire her because she was on maternity leave, in violation of both Title VII of the Civil Rights Act of 1964 and Mass Gen. Laws ch. 151B.  Under Title VII, it is unlawful for an employer to "refuse to hire . . . any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  Discrimination based on pregnancy can constitute sex discrimination in violation of Title VII.  *Id.* § 2000e(k).  Discrimination based on pregnancy is also unlawful under Mass. Gen. Laws ch. 151B, § 4.  *See Currier v. National Bd. of Med. Exam'rs*, 462 Mass. 1, 15-16 (2012).

Where, as here, there is no direct evidence of discriminatory intent in a Title VII case, this Court employs the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The framework also applies to claims of discrimination based on pregnancy under state law.  *See White v. University of Mass. at Bos.*, 410 Mass. 553, 557 (1991).

Under *McDonnell Douglas*, the burden falls initially to a plaintiff to set forth a *prima facie* case of discrimination.  411 U.S. at 802.  A properly-established *prima facie* case gives rise

to an inference of intentional discrimination. *See Ingram v. Brink's, Inc.*, 414 F.3d 222, 230 (1st Cir. 2005). The burden then shifts to an employer to provide a legitimate, nondiscriminatory reason for its decision. *Id.* "If the employer does so, the burden of production reverts to the plaintiff, who must then prove that the employer's neutral reasons were actually a pretext for the alleged discrimination." *Id*.

### 1. *Prima Facie* Case

To establish a *prima facie* case for a failure-to-hire claim, a plaintiff must show that "(1) she is a member of a protected class, (2) she was qualified for an open position for which she applied, (3) she was rejected, and (4) someone possessing similar qualifications filled the position instead." *Ingram*, 414 F.3d at 230. It is undisputed that Bennett was on maternity leave; that she was qualified for the position of general manager; that she was not hired as a general manager; and that the individual who was hired for the position, Michael Evans, had similar or lesser qualifications.

Plaintiff did not meet with defendant about working for the new company until May 13, 2011. Defendant contends that because it had already hired Evans for the general manager position on April 21, plaintiff did not apply for an open position for which she was qualified.

There is evidence in the record to the contrary. Defendant had just purchased the Massachusetts Bugaboo Creek restaurants at a bankruptcy sale. As part of that sale, all the employees were to be terminated on April 21 (the day the sale was finalized). Defendant, however, actively considered hiring those same employees so they could start on April 21 and minimize disruption to the restaurants. Defendant was reducing the number of management positions at the Braintree Bugaboo Creek restaurant from four to three, but was making its hires

8

from the existing managers. As plaintiff was one of those managers, it is highly unlikely that plaintiff was not in the pool of possible candidates for the general manager position.

There is also evidence that defendant knew that plaintiff wanted to be hired. In his affidavit, Libby states that he told Bocek and Campbell that plaintiff should be allowed to interview for the general manager position. He also told them that she was planning on returning in mid-May but that she was available to interview earlier if necessary. Libby also states that Bocek and Campbell refused to consider plaintiff seriously for the position. Bocek disputed Libby's claims in his deposition testimony. However, there is at least a genuine dispute about whether Bocek and Campbell knew plaintiff wanted to be considered for the general manager position before they hired Evans.

Defendant also contends that plaintiff was not qualified for the general manager position because she was not available to start on April 21. At her deposition, plaintiff did say that she was still on maternity leave at the time and did not end her leave until May 13. (Bennett Dep. at 131). However, she also said that she "was not medically incapable of working," (*id.*), and she contends that she could have begun working earlier than her originally planned return date if necessary. There is therefore a genuine dispute as to whether she was available to return on April 21.

Construing the facts in the light most favorable to the non-moving party, a reasonable fact-finder could conclude that plaintiff was on maternity leave, that she was qualified for the general manager position, that she applied for the position and was rejected, and that the person who was hired was a male with fewer qualifications. She has therefore established a *prima facie* case of discrimination based on pregnancy.

9

## 2. Legitimate, Non-Discriminatory Justification

Once a plaintiff has shown a *prima facie* case of discrimination, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the refusal to hire. *Ingram*, 414 F.3d at 230. Defendant contends that its legitimate, non-discriminatory reason for refusing to hire plaintiff is that she could not start work immediately. As explained above, there is at least a genuine dispute as to whether that was true.[5] Construing the facts in the light most favorable to plaintiff, defendant has failed to produce a legitimate, non-discriminatory justification for refusing to hire her.

Because there is a genuine dispute as to whether defendant has provided a legitimate, non-discriminatory reason for refusing to hire plaintiff, there is no need at this juncture for plaintiff to show that the decision was pretextual. Accordingly, defendant's motion for summary judgment will be denied as to the refusal-to-hire claims.

### B. Claim for Discrimination in Termination

The complaint also alleges unlawful discrimination in termination. To establish a *prima facie* case of discrimination because of pregnancy under Title VII, a plaintiff must show that "(1) she was pregnant at the relevant time, (2) her job performance was satisfactory, but (3) her employer took some adverse employment action against her while (4) treating non-pregnant employees differently." *Gorski v. New Hampshire Dept. of Corrections*, 290 F.3d 466, 474-75 (1st Cir. 2002). Terminating an employee is an adverse employment action. *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 54 (1st Cir. 2000). The standard for

---

[5] Defendant contends that it had no obligation to hire plaintiff, and that any claim she might have for not being hired after being on maternity leave is excluded by the bankruptcy sale order. The bankruptcy sale order only excludes liability for any obligations BCS had towards its former employees. (*See* Bocek Decl., Ex. B § 1.04(b)). It does not allow defendant to discriminate against BCS's former employees in hiring.

discriminatory termination is the same under state law. *See Sullivan v. Liberty Mut. Ins. Co.*, 444 Mass. 34, 41 (2005).

It is undisputed that defendant did not take on BCS's employment obligations when it bought the Bugaboo Creek restaurants through the bankruptcy sale. Defendant therefore never employed plaintiff, and never terminated her. In her opposition, plaintiff does not contend that defendant discriminated against her by firing her. Instead, she contends that defendant violated the law because it "refused to hire her." (Pl. Opp. at 14). That contention supports her discriminatory hiring claims described above, but does not support her discriminatory termination claims.

Plaintiff is not pursuing her discrimination-in-termination claim. Accordingly, defendant's motion for summary judgment will be granted as to those claims.

### C. Failure to Mitigate Damages

Finally, defendant contends that plaintiff's alleged back pay damages should be limited because she failed to mitigate her damages. Specifically, defendant contends that under *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219 (1982), plaintiff failed to mitigate her damages when she refused to take the regional trainer position it offered her on August 10, 2011.[6]

"An award of back pay compensates plaintiffs for lost wages and benefits between the time of the discharge and the trial court judgment." *Johnson v. Spencer Press of Me., Inc.*, 364 F.3d 368, 379 (1st Cir. 2004). "During the back pay period, individuals have an obligation to exercise 'reasonable diligence' in finding alternative suitable employment." *Id.* Awards of back pay "are offset by wages that could have been earned with reasonable diligence after the illegal

---

[6] Defendant does not contend that the assistant manager job it first offered to plaintiff was a substantially equivalent position.

discharge, regardless of whether they were actually earned." *Id.*

Under *Ford Motor*, "[a]n employee's rejection of an employer's unconditional job offer does end the accrual of the employer's potential back pay liability, absent special circumstances." *Hogan v. Bangor & Aroostook R.R. Co.*, 61 F.3d 1034, 1038 (1st Cir. 1995) (citing *Ford Motor Co.*, 458 U.S. at 241); *see also Costa v. Markey*, 706 F.2d 1, 7 (1st Cir. 1982) ("[A]bsent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability." (internal quotation marks omitted)). "Although the unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position, he forfeits his right to back pay if he refuses a job substantially equivalent to the one he was denied." *Ford Motor Co.*, 458 U.S. at 231-232 (footnote omitted).

Massachusetts has adopted the *Ford Motor* rule for cases involving claims of discrimination under Chapter 151B. *Brady v. Nestor*, 398 Mass. 184, 189 (1986). "[A] plaintiff's rejection of an objectively reasonable offer of reinstatement terminates an employee's eligibility for an award of damages based upon lost pay accruing after such a rejection." *Conway v. Electro Switch Corp.*, 402 Mass. 385, 389-90 (1988).

Plaintiff contends that "[a] reasonable juror . . . would certainly agree that [p]laintiff was 'objectively reasonable' in turning down [d]efendant's subsequent job offer from an employer that had discriminated against her for giving birth." (Pl. Opp. at 18). In support, she contends that "[d]efendant's illegal conduct precludes its arguments that [p]laintiff had to accept a job offer after she filed her discrimination charge." (*Id.*). There are situations where an employer's past discriminatory conduct can make it objectively reasonable for a Title VII claimant to turn

down an unconditional job offer. However, if that were plaintiff's only argument for not accepting the job, that might not be sufficient to show that her refusal was objectively reasonable. *See Price v. UTi Integrated Logistics, LLC*, 2013 WL 5500102, at *5 (E.D. Mo. Oct. 3. 2013) (explaining that a refusal to accept an unconditional job offer is not objectively reasonable where "[t]he discriminatory act, which was not on-going but a discrete event, had already taken place when defendant offered plaintiff reinstatement").

Plaintiff, however, also contends that the regional trainer position was not substantially similar to the general manager job. "The comparability of other jobs turns on numerous factors—e.g.[,] stature, amount of compensation, job responsibilities, and working conditions." *Lavely v. Trustees of Bos. Univ.*, 1987 WL 17539 at *7 (D. Mass. 1987) (citing *Spagnuolo v. Whirlpool Corp.*, 717 F.2d 114, 117-118 (4th Cir. 1983); *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983)). Defendant carries the burden to prove that two positions are substantially equivalent. *See Trainor v. HEI Hospitality LLC*, 699 F.3d 19, 29-30 (1st Cir. 2012)*; Sherman v. AI/FOCS, Inc.*, 113 F. Supp. 2d 65, 75 (D. Mass. 2000).

Although defendant contends that the benefits for the regional training position "were of the same level and terms as those currently enjoyed by similarly situated employees" and that the pay for the two positions was "substantially equivalent," (Def.'s Mem. at 18-19), that is not necessarily true. First, there was a ten percent difference in salary between the general manager and regional training positions.[7] In addition, plaintiff contends that unlike the general manager position, the regional training position required her to travel and not work at a fixed location.

---

[7] Although plaintiff's previous position paid $62,500 per year, defendant contends that "the salaries offered to management employees . . . were less than the salaries that were paid to those managers" by BCS prior to the bankruptcy. (Def. SMF ¶ 30). Defendant offered plaintiff $50,000 per year for the regional training position, and Evans earned a salary of $55,000 as general manager of the Braintree restaurant. (Def. SMF ¶¶ 28, 68-69).

13

Therefore, the pay disparity and working conditions of the two positions creates a genuine issue of material fact as to whether they are substantially equivalent.[8]

Accordingly, defendant's motion for summary judgment will be denied as to back pay damages accruing after August 24, 2011.

## IV. Conclusion

For the foregoing reasons, defendant's motion for summary judgment will be **GRANTED** as to plaintiff's claims for discrimination in termination, and otherwise **DENIED**.

**So Ordered.**

Dated: October 23, 2014

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

---

[8] Defendant contends that plaintiff did not seriously consider the offer of employment, as evidenced by the fact that she made no inquiries into what the regional training position entailed. (Def.'s Mem. at 18). Even if that proved to be true, that does not, under the circumstances, foreclose a finding that plaintiff was objectively reasonable, in light of the pay and travel differences.